UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADEL MAHMOUD, JR.,<br><br>Plaintiff,<br><br>v.<br><br>SELECT PORTFOLIO, INC., et al.,<br><br>Defendants. | Case No. 3:17-cv-00568-MEJ<br><br>**ORDER RE: MOTION TO DISMISS FAC**<br><br>Re: Dkt. No. 36 |

## INTRODUCTION

Pending before the Court is Defendants'[1] Motion to Dismiss the First Amended Complaint (FAC) pursuant to Federal Rule of Civil Procedure (Rule) 12(b)(6). Mot., Dkt. No. 36. Plaintiff Adel Mahmoud filed an Opposition (Dkt. No. 39) and Defendants filed a Reply (Dkt. No. 41). The Court previously vacated the hearing on the matter. Dkt. Nos. 43, 49. Having considered the parties' positions, the relevant legal authority, and the record in this case, the Court **GRANTS IN PART** Defendants' Motion for the following reasons.

## BACKGROUND

The FAC alleges the following:

Plaintiff owns residential property in San Pablo, California. FAC ¶ 1, Dkt. No. 35. On or around December 18, 2012, a massive fire severely damaged the property, forcing Plaintiff to evacuate and relocate. *Id.* ¶ 10. Plaintiff notified his insurance carrier (Pacific Specialty Insurance) and filed a claim for damages to his residence and personal belongings, and for relocation costs. *Id.* ¶ 11. On February 5, 2014, in order to ensure the fire insurance proceeds

---

[1] Defendants are Select Portfolio Servicing, Inc. ("Select Portfolio" or "SPS") and Wells Fargo Bank, N.A. as Trustee for the Certificate Holders of Asset-Backed Pass-Through Certificates, Series 2005-WCW3 ("Wells Fargo" or "Wells Fargo Bank").

were used to repair the property, the Select Portfolio filed an action against Plaintiff and Pacific Specialty Insurance Company: *Select Portfolio Servicing, Inc. v. Pac. Specialty Ins. Co*., Case No. 14-cv-551 YGR (N.D. Cal.) (*Mahmoud I*). *Id.* ¶¶ 12, 13 (representing Select Portfolio "seeks to protect its interest in the Property by ensuring that any damage to the Property is repaired and that, to the extent necessary, the insurance funds are used solely for that purpose."). Select Portfolio alleged in the *Mahmoud I* complaint that it was "the mortgage servicer for a home mortgage loan issued to holder and beneficiary of the loan, . . . Wells Fargo." *Id.* ¶ 12. Plaintiff filed a Crossclaim against Pacific Specialty Insurance and Select Portfolio, asserting claims based on breach of contract, breach of the covenant of good faith and fair dealing, violation of the California Homeowners' Bill of Rights, Negligence, and Fraudulent Misrepresentation. *Mahmoud I*, Dkt. No. 24 (Crossclaim). Plaintiff also separately filed a Counterclaim against Select Portfolio asserting identical claims. *Mahmoud I*, Dkt. No. 26 (Counterclaim). Wells Fargo was not named as a party in *Mahmoud I*. Both the Crossclaim and Counterclaim were based on Select Portfolio's failure to provide Plaintiff a home loan modification when he was unable to pay his mortgage after a business downturn. They also allege the facts at issue in the FAC. *See* Crossclaim ¶¶ 14-26; Counterclaim ¶¶ 14-26.

Plaintiff, Pacific Specialty Insurance, Wells Fargo, and Select Portfolio entered into a settlement agreement that resolved *Mahmoud I*. FAC ¶¶ 14, 23 & Ex. A (Settlement Agreement). Based on an estimate of repair that was agreed to by all parties, Pacific Specialty Insurance issued payments in the amount of $104,164.59. *Id.* ¶ 15. The insurance check was co-written to Plaintiff and Select Portfolio and could not be cashed without both payees' endorsement. *Id.* With the understanding that the funds would be disbursed solely for repairing the damaged property, Plaintiff endorsed and delivered the insurance check to Select Portfolio to hold the funds in trust. *Id.* ¶¶ 16, 24, 35-36.

The Settlement Agreement establishes a time-line for disbursement of the repair funds. *Id.* ¶ 17 & Settlement Agreement § 3(F). The first payment, in the amount of one-third of the insurance payment, was to be made payable to a mutually agreed-upon contractor and Plaintiff upon construction of the work. *Id.* The second payment was to be made after 50% of the repairs

2

had been completed; the third and final payment, after 90% of the repairs had been completed. Settlement Agreement § 3(F).

Before all parties executed the Settlement Agreement, Plaintiff hired a construction company, which submitted a detailed estimate for repair work to Defendants; Defendants did not object to the contractor or its estimate. *Id.* ¶¶ 18, 24; *see also* Settlement Agreement at 6-7 (showing Plaintiff executed Agreement on December 31, 2014, SPS and Wells Fargo on January 12, 2015). The estimated cost of the repairs was within the available insurance proceeds. FAC ¶ 24. Plaintiff purchased materials, began to remove debris from the property, and began working with the contractor to make the property habitable; he informed Defendants he commenced repair work in January 2015. *Id.* ¶¶ 19, 24.

Plaintiff made "numerous demands for payment", but received none. *Id.* ¶ 19. Plaintiff communicated numerous times with Defendants' litigation counsel by phone and e-mail; on February 20, 2015, counsel promised the funds for repair would be released within the week. *Id.*; *cf. id.* ¶ 25 ("Defendants breached their promise to disburse the funds when they were notified about the commencement of the repairwork in January 2015 or February 27, 2015 when they expressly advised and represented to Plaintiff's counsel that the insurance proceeds would be available by February 27, 2015 in exchange to plaintiff's counsel consent to Defendants' counsel to file the stipulation for dismissal" in *Mahmoud I*). In reliance on counsel's promise, Plaintiff authorized Defendants to dismiss his pending Crossclaim in *Mahmoud I*. *Id.* ¶ 20; *see also Mahmoud I*, Dkt. No. 58 (Stipulation to Dismiss Entire Case with Prejudice) & Dkt. No. 59 (Order Dismissing Entire Case with Prejudice).

Even though Plaintiff performed all of his obligations under the Settlement Agreement, Defendants still refused to pay any funds pursuant to the terms of the Settlement Agreement. FAC ¶¶ 21, 25.

At no time did Plaintiff default on his loan payments. *Id.* ¶ 24.

On February 3, 2017, Plaintiff filed this action. *See* Compl., Dkt. No. 1. The Complaint asserted a number of claims, many of which were premised on the theory that Defendants could not foreclose on his property because they did not have title to it because the assignment to them

3

was fraudulent. *See id.* The Complaint stated almost no facts regarding the Settlement Agreement. *See id.* The Court granted Defendants' Motion to Dismiss with leave to amend. First Order, Dkt. No. 34. Plaintiff subsequently agreed to dismiss two defendants. Stip. of Voluntary Dismissal, Dkt. No. 44. The FAC asserts claims for Breach of Contract, Breach of the Covenant of Good Faith and Fair Dealing, Breach of Fiduciary Duty, Promissory Fraud, and conversion; it abandons Plaintiff's prior fraudulent assignment theory. *See* FAC. Each claim is asserted against both remaining Defendants. *See id.* Defendants once more move to dismiss the pleading.

**LEGAL STANDARD**

Rule 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citation omitted).

A court may dismiss a complaint under Rule 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Twombly*, 550 U.S. at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007). In addition, courts may consider documents attached to the complaint. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted).

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotations and citations omitted). However, the Court may deny leave to amend for a number of reasons, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## DISCUSSION

Defendants move to dismiss each of the claims set forth in the FAC, arguing Plaintiff fails to state a claim for which relief can be granted.

### A. Breach of Contract

"Under California law, to state a claim for breach of contract a plaintiff must plead the contract, plaintiff's performance (or excuse for nonperformance), defendant's breach, and damage to plaintiff therefrom." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1028 (N.D. Cal. 2012) (internal quotation marks omitted). "A written contract may be pleaded either by its terms—set out verbatim in the complaint or a copy of the contract attached to the complaint and incorporated therein by reference—or by its legal effect." *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1489 (2006); *accord Haskins v. Symantec Corp.*, 2013 WL 6234610 at *10 (N.D. Cal. Dec. 2, 2013).

Plaintiff alleges the necessary elements to state a breach of contract claim against Select Portfolio.

#### 1. Existence of a Contract

The Court dismissed the Breach of Contract claim in the original Complaint for a number of reasons, including because Plaintiff failed to either attach the contract or plead its legal effects and failed to "specify which defendant, Wells Fargo or Select Portfolio, entered into a binding settlement agreement with him, nor which defendant breached the Settlement." First Order at 6-7.

Plaintiff attaches the Settlement Agreement to the FAC. Defendants argue Plaintiff still fails to state a claim because he does not identify the Defendant to whom he submitted the detailed estimate, which they contend violates the Court's prior Order requiring him to do so. Mot. at 10. The attached Settlement Agreement, which bears the signatures of Plaintiff and representatives of Wells Fargo, Select Portfolio, and Pacific Specialty Insurance Company, now establishes the existence of a contract between those parties.

2. Conditions Precedent

Plaintiff alleges he performed all his obligations under the Settlement Agreement by signing over the check to Select Portfolio, locating a mutually-agreed upon contractor, providing a detailed estimate of the work to be done, beginning the repair work, demanding payment for such, and not defaulting on his mortgage payments. FAC ¶ 24; *see supra*; *see also* Settlement Agreement § 3(B) (Plaintiff agrees to sign insurance check and forward it to Select Portfolio) & 3(E) (Plaintiff agrees to provide a repair estimate for the damage to the property resulting from the fire loss from a mutually-agreeable contractor within the amount of the insurance payment).

Defendants argue Plaintiff does not sufficiently allege he submitted a detailed estimate to SPS, or that the contractor he selected was acceptable to SPS. Mot. at 10. In fact, Plaintiff alleges he submitted the detailed estimate to "Defendants," and that he never heard any concern or objection from them regarding the contractor or the estimate. FAC ¶¶ 18, 24.[2] For purposes of this Motion, the Court must accept these allegations as true. Moreover, the FAC sufficiently pleads that the failure to object constitutes approval of the contractor. Plaintiff sufficiently alleges he satisfied the conditions precedent for the first disbursement. *See* Fed. R. Civ. P. 9(c) ("In pleading conditions precedent, it suffices to allege generally that all conditions precedent have

---

[2] Defendants also appear to argue Plaintiff fails to state a claim because he alleges he retained the contractor and provided his name to Defendants before the effective date of the Settlement Agreement, and that he alleges he performed some of the work himself. Mot. at 10-11. Plaintiff alleges his house was burned down and uninhabitable. FAC ¶¶ 1, 10. That he attempted to hire a contractor and get Defendants' approval at the same time the parties were finalizing their contract negotiations, or that he performed some of the labor to accelerate the project, is not inconsistent with the terms of the Settlement Agreement. Indeed, the contract requires Plaintiff to provide the estimate "no later than December 15, 2014" (Settlement Agreement § 3(E)), and Defendants did not execute the Settlement Agreement until January 12, 2015 (*id.* at p.7).

6

occurred or been performed. But when denying that a condition precedent has occurred or been performed, a party must do so with particularity.").

Defendants argue Plaintiff fails to allege he satisfied the conditions precedent for the second and third draws. Mot. at 10. The Settlement Agreement only requires Select Portfolio to disburse the second draw "upon completion of 50 percent of the repairs and inspection thereof by" Select Portfolio and Plaintiff. Settlement Agreement § 3(F)(2). It further requires Select Portfolio to disburse the third draw "upon completion of 90 percent of the repairs and inspection thereof." *Id.* § 3(F)(3). Plaintiff only alleges "some" of the repair work has been done, and that "there still remains substantial work of repair that need to be done." FAC ¶ 26. The FAC therefore does not allege he satisfied the conditions precedent for those next draws. But this does not defeat the allegations showing Plaintiff performed the conditions precedent required for the first draw.

3. Breach

Plaintiff alleges "Defendants" breached the Settlement Agreement by not disbursing any payment to Plaintiff. But the Settlement Agreement imposes no such duty on Wells Fargo. Rather, the Settlement Agreement provides that SPS is designated to hold and disburse the insurance payment. Settlement Agreement § 3(F). It makes no mention of Wells Fargo's obligations to disburse payment, and the FAC likewise contains no facts showing how Wells Fargo had any obligation under the Settlement Agreement to distribute payments. Plaintiff therefore has not stated facts sufficient to show Wells Fargo breached the Settlement Agreement.

In sum, Plaintiff sufficiently alleges facts showing Select Portfolio breached the Settlement Agreement by withholding the first disbursement after Plaintiff satisfied the conditions precedent. He fails, however, to show any breach on Wells Fargo's part, or any breach by SPS based on the second or third disbursements.

4. Damages

Plaintiff sufficiently alleges he suffered damages by advancing material and labor costs, and on account of the stalling of the work needed to make his home habitable. FAC ¶ 26. Defendants argue the Settlement Agreement provides for payment to Plaintiff and the agreed-upon contractor, not Plaintiff alone. Mot. at 10. This does not defeat Plaintiff's showing that he has

7

1  suffered damages as a result of Select Portfolio's failure to make the first disbursement to him and
2  the contractor.

   5.   Summary

For the foregoing reasons, the Court finds Plaintiff has stated a breach of contract claim against Select Portfolio with respect to its failure to make the first disbursement, but not against Wells Fargo. The Court accordingly DISMISSES this claim as to Wells Fargo, and DISMISSES the claim as to SPS to the extent it is based on the second and third disbursements.

**B.   Breach of Covenant of Good Faith and Fair Dealing**

California law implies in every contract the covenant of good faith and fair dealing. *Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 349 (2000). The implied covenant prevents one of the contracting parties from unfairly frustrating the other party's right to receive the benefits of the agreement. *Id.*; *see also Marsu, B.V. v. Walt Disney Co.*, 185 F.3d 932, 937–38 (9th Cir.1999) (internal quotation marks omitted) ("The covenant is implied . . . to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenant) frustrates the other party's rights of the benefits of the contract." (citing *Los Angeles Equestrian Ctr., Inc. v. City of Los Angeles*, 17 Cal. App. 4th 432, 447 (1993)). "A claim for breach of the implied covenant of good faith and fair dealing requires the same elements [as a claim for breach of contract], except that instead of showing that defendant breached a contractual duty, the plaintiff must show, in essence, that defendant deprived the plaintiff of a benefit conferred by the contract in violation of the parties' expectations at the time of contracting." *Levy v. JP Morgan Chase*, 2010 WL 4641033, at *3 (S.D. Cal. Nov. 5, 2010) (applying California law).

As the Settlement imposes no contractual obligations upon Wells Fargo, and as Plaintiff fails to plead facts sufficient to show Wells Fargo's actions or inaction frustrated his right to receive benefits conferred by the Settlement Agreement, he also fails to state a claim for breach of the covenant of good faith and fair dealing as to that Defendant.

But Plaintiff has stated a breach of contract claim against Select Portfolio. The FAC alleges facts sufficient to show Select Portfolio interfered with his rights under the contract. Under the terms of the Settlement Agreement, Plaintiff released his claims against Defendants in

8

exchange for ensuring the insurance proceeds paid by Pacific Specialty Insurance Company would be used to rebuild his home and make it habitable. *See* Settlement Agreement § 3(H). He alleges that, by withholding the first disbursement of these funds despite his satisfaction of the conditions precedent, Select Portfolio unreasonably prevented him from achieving the purpose of the Settlement Agreement—making his home habitable. By withholding the first disbursement, Select Portfolio frustrated Plaintiff's ability to obtain the second and third disbursements, as these were conditioned upon Plaintiff completing the repair work by 50% and then 90%. Without the funds to pay the contractor for the first phase of the work, he could never hope to recover for the second and third phases, and could not make his home habitable.

The Court therefore DISMISSES Plaintiff's claim for breach of the implied covenant of good faith against Wells Fargo, but not against Select Portfolio.

### C. Breach of Fiduciary Duty

The elements for a breach of fiduciary duty are: (1) existence of a fiduciary duty, (2) breach of the fiduciary duty, and (3) damages proximately caused by the breach. *Tribeca Cos., LLC v. First Am. Title*, 239 Cal. App. 4th 1088, 1114 (2015). "A mere contract or debt does not constitute a trust or create a fiduciary relationship." *Waverly Prods., Inc. v. RKO Gen., Inc.*, 27 Cal. App. 2d 721, 732 (1963). "[C]reation of such a duty requires unequivocal contractual language." *Chemical Bank v. Sec. Pac. Nat'l Bank*, 20 F.3d 375, 377 (9th Cir. 1994) (internal quotation marks and citation omitted); *see also Marsh v. Home Fed. Savings & Loan Ass'n*, 66 Cal. App. 3d 674, 681-82 (1977) ("[A] trust requires a clear intention to create the trust, although no particular language is necessary to manifest that intent. [ ] It is the manifestation of intention which controls and not the actual intention. . . ." (internal quotation marks omitted)). "[B]efore a person can be charged with a fiduciary obligation, he must either knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law." *City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 43 Cal. 4th 375, 386 (2008) (internal quotation marks omitted).

The Court previously dismissed Plaintiff's claim for breach of fiduciary duty, but granted him leave to amend "provided he can allege specific facts showing a fiduciary relationship." First

9

1 Order at 9-10. In the FAC, Plaintiff conclusorily alleges the parties intended to create a trust

2 (FAC ¶¶ 34-36), but he identifies no "unequivocal contractual language" in the Settlement

3 Agreement or other facts showing that the parties intended to create a fiduciary relationship

4 whereby Defendants would act for Plaintiff's benefit. *Cf.* FAC, Nature of Case ("Mahmoud, with

5 the agreement and understanding of Defendants that the insurance proceeds would be kept in

6 *escrow or trust account. . . .*" (emphasis added)). Indeed, the Settlement Agreement suggests

7 otherwise. First, the insurance check was issued jointly to Plaintiff and SPS in settlement of

8 *Mahmoud I*, for the express purpose of ensuring necessary repairs to the property. *See* Settlement

9 Agreement § 2. Second, the Settlement Agreement called for the funds to be jointly disbursed to

10 Plaintiff and an approved contractor for work on the property. *Id.* § 3(A), (F). These provisions

11 show that, at least on the face of the document, the Settlement Agreement was not an instrument

12 through which Defendants undertook to act on Plaintiff's behalf, but rather a tool to manage

13 insurance payments in order to rebuild the property which Plaintiff inhabited and which also

14 served as collateral for the loan SPS serviced and Wells Fargo held. The Settlement Agreement

15 imposes no obligations upon Wells Fargo, much less includes unequivocal language to that effect.

16 Without facts plausibly showing the parties intended to create a fiduciary obligation, Plaintiff fails

17 to state a claim for breach of fiduciary duty.

18 The Court accordingly DISMISSES this claim as to both Defendants.

19 **D.  Promissory Fraud**

20 "'Promissory fraud' is a subspecies of fraud which permits a plaintiff to state a cause of

21 action in tort when a defendant fraudulently induces him to enter into a contract." *Richardson v.*

22 *Reliance Nat'l Indem. Co.*, 2000 WL 284211, at *4 (N.D. Cal. Mar. 9, 2000) (citation omitted).

23 "In alleging fraud or mistake, a party must state with particularity the circumstances constituting

24 fraud or mistake." Fed. R. Civ. P. 9(b); *see Richardson*, 2000 WL 284211, at *4-5 (applying Rule

25 9 to promissory fraud claim). Furthermore, "[a]verments of fraud must be accompanied by 'the

26 who, what, when, where, and how' of the misconduct charged." *Kearns v. Ford Motor Co.*, 567

27 F.3d 1120, 1124 (9th Cir. 2009). Essentially, "[w]hile mere failure to perform on a contract does

28 not constitute fraud, a promise made without the intention to perform can be actionable fraud." *Id.*

10

(citations omitted).

The Court previously dismissed the promissory fraud claim asserted in the original complaint, holding:

> Plaintiff does not state with particularity the circumstances showing promissory fraud. . . . Plaintiff fails to identify which Defendants fraudulently misrepresented what facts to him. . . . Nor does Plaintiff adequately plead intent: his assertion that Defendants had no intention to disburse the insurance money at the time they entered into the contract at issue is conclusory; he offers no facts showing how he knows this to be true. . . . Simply pointing to Defendant[s'] alleged failure to perform under the parties' agreement is insufficient to establish Defendant[s'] fraudulent intent. . . . Plaintiff offers no facts to show Defendants' promises were false when they made them.

First Order at 12-13 (brackets in original; internal quotation marks and citations omitted). Although the FAC contains more verbiage than the original Complaint, it fails to correct the deficiencies the Court previously noted. For the most part, the FAC still fails to allege which Defendant (and what employee or agent of each Defendant) made what alleged promises, and still fails to allege fact sufficient to show Defendants intended not to disburse the funds at the time they entered into the Settlement Agreement. *See* FAC ¶¶ 40-48.

Plaintiff argues the FAC alleges four false statements, all of which he contends were made in the Settlement Agreement itself: SPS' intent to cooperate with Plaintiff to effectuate repairs; the purpose of filing *Mahmoud I* was to ensure necessary repairs were made to the property; the initial draw for payment would be made upon commencement of repairs; and the payment would be made as long as Plaintiff had not defaulted on the loan modification agreement and no sale had been scheduled. Opp'n at 12. SPS' purpose for filing *Mahmoud I* does not appear to constitute a promise. Assuming for purposes of this Motion that the other statements Plaintiff identifies are promises, Plaintiff alleges no facts showing Wells Fargo made any of these promises, and alleges no facts showing that Select Portfolio did not intend to follow through on those promises. "[T]he FAC falls short because Plaintiff[ has] failed to allege facts sufficient to support a plausible inference that the statements were actually false when made. All that is alleged in the FAC is that the statements turned out to be false. But courts have oft rejected the argument that a plaintiff can prove the requisite fraudulent intent by simply pointing to the defendant's subsequent failure to

perform under the agreement." *Muse Brands, LLC v. Gentil*, 2015 WL 4572975, at *5 (N.D. Cal. July 29, 2015); *see also* First Order at 12.

The insufficiency of Plaintiff's allegations is illustrated by the allegations regarding a February 20, 2015 telephone call.[3] *See* FAC ¶ 45(c). Plaintiff alleges that on that day,

> Defendants, through their litigation counsel, prepared [a] Stipulation for Dismissal of [*Mahmoud I*], which was prepared as a result of the Settlement Agreement. Plaintiff's counsel advised that until the first initial disbursement for the repair was made to Plaintiff that the Stipulation for Dismissal should not be filed. On February 20, 2015, Defendants' litigation counsel advised and represented in writing to Plaintiff's counsel that his clients have agreed to disburse the funds by February 27, 2015. Based on that re[pres]entation, Plaintiff's counsel consented to the dismissal of the action, thereby losing his last leverage to ensure that the insurance proceeds are disbursed for the repair of the residence. Showing that Defendants interest was not in the repair but to avoid disbursement of the repair funds.

FAC ¶ 45(c). Plaintiff generally asserts that "Defendants' litigation counsel" in *Mahmoud I* promised the funds would be disbursed. *Id.* But although Wells Fargo was a signatory to the Settlement Agreement, it was not named as a defendant in *Mahmoud I*; only Select Portfolio and Plaintiff's insurance company litigated that action. *See Mahmoud I* Dkt. Select Portfolio and Pacific Specialty Insurance Company were represented by different counsel in *Mahmoud I*. The FAC insufficiently alleges whether Select Portfolio or Pacific Specialty's counsel represented that the action would be dismissed; it does not allege Wells Fargo was involved in this communication. Without more, the fact Select Portfolio did not disburse the funds does not indicate that the promises undertaken in the Settlement Agreement were fraudulent.

Plaintiff fails to state a promissory fraud claim against Wells Fargo or Select Portfolio. That claim is DISMISSED as to both Defendants.

**E. Conversion**

"Conversion is any act of dominion wrongfully exerted over another's personal property in

---

[3] Defendants correctly argue that, because this conversation took place well over a month after the Settlement Agreement was fully executed, it cannot form the basis of a promissory fraud claim. Mot. at 14. But, if properly alleged, this nonetheless could be relevant to showing a pattern and practice of reneging on commitments undertaken in the Settlement Agreement, and therefore could support Plaintiff's contention the promises made in the Settlement Agreement were fraudulent. *See Tenzer v. Superscope, Inc.*, 39 Cal. App. 3d 331, 338 (1976).

denial of or inconsistent with his rights therein," which includes assuming "control or ownership over the property," or applying the property to one's own use. *Messerall v. Fulwider*, 199 Cal. App. 3d 1324, 1329 (1988) (citing *Igauye v. Howard*, 114 Cal. App. 2d 122, 126 (1952)). To state a claim for conversion under California law, Plaintiff must allege (1) ownership or right to possession of property, (2) wrongful disposition of that property right, and (3) damages. *G.S. Rasmussen & Assoc. v. Kalitta Flying Serv.*, 958 F.2d 896, 906 (9th Cir. 1992). Legal title to property is not necessary; a plaintiff must only show he was "entitled to immediate possession at the time of conversion." *Messerall*, 199 Cal. App. 3d at 1329.

Because he states no facts showing that Wells Fargo at any point held the insurance proceeds or had an obligation to disburse those proceeds to him or anyone else, and because the Settlement Agreement imposes no such obligation on Wells Fargo, Plaintiff does not state a conversion claim against Wells Fargo.

As discussed above, the insurance proceeds were paid to Plaintiff and SPS jointly for the express purpose of making repairs to Plaintiff's property, which was subject to a loan serviced by SPS and secured by a deed of trust held by Wells Fargo. Plaintiff alone was not entitled to the first disbursement; the Settlement Agreement required SPS to pay it to the "mutually agreed upon contractor *and* Borrower", that is, Plaintiff. Settlement Agreement § 3(F)(1) (emphasis added). The meaning of this provision is not obvious from the face of the Settlement Agreement. It does not, in and of itself, establish Plaintiff would not have control or ownership over any part of the disbursements. On the contrary, it suggests Plaintiff was entitled to some portion of the first disbursement, which SPS allegedly denied him. Accordingly, the Court finds Plaintiff has sufficiently stated a conversion claim as to the first disbursement.

However, because the conditions precedent for the second and third disbursements are not alleged to have been met, the FAC does not allege facts showing Plaintiff was entitled to any portion of those funds.

Because the conversion claim is based on the same allegations Plaintiff included in the original complaint, the Court finds Defendants have not been prejudiced by the addition of this claim to the FAC.

13

The Court DISMISSES the conversion claim as to Wells Fargo, but not as to SPS' failure to make the first disbursement.

## CONCLUSION

The Court **GRANTS IN PART** Defendants' Motion to Dismiss the FAC. Plaintiff has not stated any cause of action against Defendant Wells Fargo; he has stated a claim for breach of contract and conversion based on Defendant Select Portfolio's alleged failure to make the first disbursement, and he has stated a claim for breach of the duty of good faith and fair dealing against Select Portfolio.

Plaintiff requests leave to amend, but does not describe how he would amend the Complaint or why he can now allege facts he could not allege in the Complaint or FAC. *See* Opp'n at 15. Each of Plaintiff's claims is based on the Settlement Agreement and the failure to disburse funds thereunder. *See supra*. Wells Fargo did not have any contractual obligations pursuant to the Settlement Agreement to hold, manage, or disburse the insurance proceeds. In addition, Plaintiff has failed to allege Wells Fargo (as opposed to SPS) made any promises to him, much less false ones. The Court accordingly finds it would be futile to allow Plaintiff leave to amend any of the claims asserted against that Defendant. Those claims accordingly are dismissed without leave to amend. The Court will separately enter judgment in Wells Fargo's favor.

With respect to the claims asserted against Select Portfolio, it is not entirely clear that it would be futile to grant him leave to amend the claims for breach of fiduciary duty and promissory fraud. The Court previously granted Plaintiff leave to amend these claims to allege facts sufficient to show Defendants owed him a fiduciary duty and made false promises to him. Instead of alleging such facts, the FAC asserts only conclusions that do not meet the standards of Rule 8 and Rule 9(b); he has not rectified the inadequacies the Court noted in its First Order. The Court will nevertheless give Plaintiff one more opportunity to amend these claims as to Select Portfolio. Any amended complaint shall be filed by January 25, 2018. Alternatively, Plaintiff may file a

14

notice indicating he does not intend to amend; if he does so, Select Portfolio shall answer the FAC, as narrowed by this Order.

**IT IS SO ORDERED.**

Dated: January 3, 2018

_____
MARIA-ELENA JAMES
United States Magistrate Judge